Argued November 12; affirmed December 17, 1940; rehearing
denied January 21, 1941

# COX *v.* THOMAS ET AL.

(108 P. (2d) 269)

*C. F. Pruess,* of Grants Pass, for appellant.

*Sherman S. Smith,* of Grants Pass, for respondent.

BAILEY, J. This suit was instituted by Edward A. Cox against Owen A. Thomas, Gold Bond Placers, a corporation, C. T. McClanahan, R. S. Shelley and any and all other persons having or claiming any interest in the property described in the complaint. The amended complaint asked for a decree to the effect that the defendants Thomas and Shelley held title to certain mining claims as trustees for the plaintiff, and for a further decree of strict foreclosure of a contract for the sale of those mining claims and other described real property. The plaintiff has appealed

from that part of the decree of the circuit court unfavorable to him.

On August 15, 1935, the plaintiff and the defendant Thomas entered into a contract by the terms of which the plaintiff agreed to sell to the defendant and the defendant agreed to purchase from the plaintiff mining properties located in Josephine county, Oregon, for a consideration of $10,000, of which amount $1,500 was to be paid in cash, $2,000 was to be paid on or before February 15, 1936, a further sum of $3,500 on or before February 15, 1937, and the balance of $3,000 on or before February 15, 1938.

Included in the description of property to be transferred were three mining claims known as Gold Bond placer claims Nos. 1, 2 and 3. These three placer claims are the only mining property with which we are here concerned. At the time this contract was entered into they were owned severally by Julia A. Smith, the plaintiff's mother-in-law, T. I. Smith, his father-in-law, and Albert Leifert, brother-in-law of Julia A. Smith. The owners of the Gold Bond claims left it to the plaintiff, Cox, to dispose of them to their best advantage as might appear to him. There was no agreement between Cox and these owners, either written or oral, for the purchase of the claims by Cox; nor was there any understanding, at first, as to how much of the purchase price to be paid by Thomas to Cox should be apportioned to the Smiths and Leifert in payment for their mining claims.

Sometime after the contract between Cox and Thomas was entered into, the defendant Gold Bond Placers, a corporation, was organized and Thomas assigned to that corporation all his interest and rights under his contract with Cox. Thomas at first was

vice-president and manager of the corporation, and later its president and manager.

On February 15, 1936, Thomas was delinquent to the extent of $1,000 in the installment payment of his contract. On or about that date he and Cox modified their agreement as to time of payment, by extending "the remaining payments . . . for a period of six months from and after the due date thereof". Later, other modifications were made as to payments. The final extension of time, however, expired November 10, 1937. The original complaint was filed November 24, 1937. It was therein alleged that the defendants Thomas and Gold Bond Placers, a corporation, were in default, and the prayer of the complaint was for a strict foreclosure of the contract.

An amended and supplemental complaint was filed March 12, 1938, which repeated the averments of the original complaint and in addition alleged that the defendant Thomas, acting for and on behalf of Gold Bond Placers, a corporation, acquired from the Smiths and Leifert, on payment of $1,000 to them, a deed for the three mining claims hereinabove mentioned, and thereafter, on December 3, 1937, without the knowledge of the plaintiff, Thomas executed and delivered to the defendant Shelley his deed for those mining claims.

The defendants Thomas and Gold Bond Placers failed to appear in the case and an order of default was entered as to them.

The amended answer filed by the defendants Shelley and McClanahan alleges that they were informed by Cox and Thomas that Thomas and the defendant corporation were in default with respect to the contract with the plaintiff, Cox; that the Smiths and Leifert were withdrawing from the defendant corporation the

privilege of purchasing the Gold Bond claims 1, 2 and 3; that the defendant Shelley thereupon purchased those claims from the Smiths and Leifert and gave to the defendant corporation the right to purchase the same from Shelley within thirty days from the date he acquired them; and that the defendant corporation and Thomas failed to exercise that option. Shelley asked in the prayer of his amended answer that he be decreed to be the owner of those claims and that the plaintiff be decreed to have no right or title in or to them.

We revert now to the record. The $1,500 to be paid upon the signing of the contract between Thomas and Cox was not actually paid until February 13, 1936. At that time Thomas paid the sum of $2,500, of which $1,000 was to be applied on the payment of $2,000 due February 15, 1936. No other payments were made by Thomas.

On September 23, 1937, an escrow agreement was executed by Cox and Thomas, addressed to a branch of the United States National Bank of Portland at Grants Pass. This escrow agreement recited that deeds executed by Cox and his wife as grantors, the grantee in blank, were being deposited with the bank. The bank was directed to deliver those deeds to Thomas or his authorized agent on or before October 23, 1937, upon payment of $5,000 by Thomas, and in the event that the money was not paid, the deeds were to be returned to Cox. These deeds did not include the three Gold Bond claims. On October 26 the time for complying with the escrow terms was extended to November 10, 1937.

The bank at Grants Pass on November 3, 1937, received from the main bank in Portland for collection

a sight draft drawn on Thomas by Leifert, in the amount of $1,000. To this was attached a quitclaim deed, shown by the record to be a deed from the Smiths and Leifert for the three Gold Bond claims. This sight draft was never honored and on December 2, 1937, it and the attached deed were returned to the bank in Portland.

While the sight draft and the deed were in the bank at Grants Pass, Cox wrote to Shelley, informing him that the deed was in the bank and "is liable to be called back, as I only have a verbal agreement with the Smiths' claims, and I have orders from them that there must not be any more mining on their ground until a settlement is made."

This suit was instituted, as above stated, on November 24, 1937, and summons was served November 26 on Shelley and all the other defendants except McClanahan. On December 2, 1937, escrow instructions signed by Shelley and Thomas were delivered to and accepted by the United States National Bank in Portland, in which it was recited that there was deposited in escrow by Shelley the sum of $1,000, to be held by the bank until Thomas should deposit or cause to be deposited with the bank in escrow a deed executed by Leifert and others to Thomas, conveying the Gold Bond claims, together with a bargain and sale deed executed by Thomas as grantor to Shelley as grantee, covering the same mining claims. It was further provided in the instructions that on deposit of those deeds the bank was to pay to Leifert the sum of $1,000 and to hold the deeds for thirty days thereafter; and that if during that time Thomas should pay to the bank $1,010 [the $10 added as escrow charge] plus eight per cent interest from the date of the escrow, the deeds should be de-

livered to Thomas and the $1,010 and interest to Shelley. On the failure of Thomas to pay the money required of him within the thirty days, the deeds were to be delivered to Shelley.

The deeds mentioned in the escrow instructions were deposited in escrow. The $1,000 deposited by Shelley was paid to Leifert, for him and the Smiths. And upon the failure of Thomas to pay to the bank within the time specified in the escrow instructions the amount therein required, the deeds were delivered by the bank to Shelley and were recorded by him.

Out of the $2,500 paid to him by Thomas on February 13, 1936, Cox on March 13, 1936, paid $1,000 to the Smiths and Leifert. Questioned as to how much more money was to be paid to the Smiths and Leifert, and the time of such payment, Cox testified as follows:

"Q. How much more did you expect to pay them for that property? A. I told her [Mrs. Smith] at the time I give her that check, as soon as I collected more money from the Gold Bond Placers or Mr. Thomas I would give her another thousand dollars.

*　　　*　　　*　　　*　　　*

"Q. And was there any other understanding at any time for a definite time of payment of that thousand dollars? A. No, not with me, there wasn't.

"Q. How did you expect to pay them that thousand dollars? A. Well, as Mr. Thomas paid me, I expected to pay them."

With regard further to his dealings with the Smiths and Leifert, the plaintiff thus testified:

"Q. And the total consideration to the Smiths was two thousand dollars? A. No, there was no total consideration between I and Smith.

"Q. I thought you just stated a few minutes ago the consideration to Smith and Leifert was two thou-

sand dollars. A. I said I had made that myself, not Smith and Leifert.

"Q. Now, you did have an understanding, then, with Smith and Leifert that they were to receive two thousand dollars for their property? A. I will say, when I give her this check—I give her a check for one thousand dollars down here in the bank, and she asked me how much more I would give her and I told her when I got a settlement with Mr. Thomas I would give her another thousand.

      ❊        ❊        ❊        ❊        ❊

"Q. Now, were you making a profit on their property? A. No. Q. You were not making any profit on their property? A. No, just helping them out. Q. All right. You were acting as agent for them? A. Helping them out."

The decree of the circuit court foreclosed the contract between the plaintiff and the defendant Thomas and gave to the defendants Thomas and Gold Bond Placers thirty days from the date of the decree in which to pay the balance of the purchase price with interest thereon at the rate of six per cent from February 13, 1936, or be forever barred and enjoined from asserting or claiming any right, title, estate, lien or interest in the property owned by Cox and his wife described in the contract of August 15, 1935. It was further decreed that Shelley, "so far as concerns any right or claim of right by the plaintiff Edward A. Cox or the defendant Owen A. Thomas, is the owner of those certain unpatented placer mining claims known as" Gold Bond claims Nos. 1, 2 and 3. It was also decreed that Cox and Thomas be forever barred and enjoined from asserting any right to those claims.

It is the plaintiff's theory, as we understand from his brief, that the $1,000 paid by Shelley and received

by the Smiths and Leifert should be considered as a payment by or on behalf of Thomas to apply on his contract of August 15, 1935, with Cox, and that inasmuch as Thomas has defaulted in his payments on that contract to Cox, the contract should be foreclosed and the plaintiff should be decreed the owner of not only the land which he and his wife contracted to sell to Thomas, but also the three Gold Bond claims originally owned by the Smiths and Leifert and by Cox contracted to be sold to Thomas.

The plaintiff contends that the $1,000 paid by Shelley and received by the Smiths and Leifert was in effect a payment by Thomas on behalf of Cox to the owners of the Gold Bond claims, who, upon receipt of this $1,000, were paid the full purchase price for their mining claims; that Cox thereupon became the equitable owner of those claims; and that since Thomas had defaulted in his contract with Cox, either Thomas, to whom the Smiths and Leifert had conveyed the mining claims, or his grantee, if he had conveyed those properties, should be decreed to hold title to the mining claims in trust for Cox.

The testimony of Cox which we have hereinabove quoted conclusively establishes the fact that Cox never agreed to purchase the Gold Bond claims from the Smiths and Leifert, and that his attempt to sell the claims to Thomas was on behalf of those owners, without any expectation of receiving a profit for himself from such sale. Out of the payment made by Thomas he turned over $1,000 to the Smiths and Leifert, but he did not intend to pay them anything more pending a settlement with Thomas. If Thomas made no further payment, the Smiths and Leifert were not to receive anything more from Cox.

It was not until after Cox had declared Thomas in default and had instituted a suit for strict foreclosure that Shelley did anything toward purchasing the three Gold Bond claims. At that time, if the allegations of the complaint and the amended and supplemental complaint are to be believed, Thomas and the corporation, Gold Bond Placers, were insolvent.

■ In contracting with Thomas to sell to him the Gold Bond mining claims, Cox was acting for and on behalf of the Smiths and Leifert, as their agent without compensation or profit for his services. When Thomas defaulted in his contract and refused to proceed further with it the Smiths and Leifert undertook to dispose of their claims to the best advantage possible. After negotiations with Shelley the escrow arrangement hereinabove described was entered into by Shelley, Thomas and the bank. It was Shelley who deposited the $1,000 thereafter paid to the Smiths and Leifert for their deeds to the mining claims. The only interest that Thomas had in the transaction was an option to acquire title to the mining claims by repaying to Shelley the $1,000 paid by the latter.

As agent for the Smiths and Leifert, Cox could not, under the facts in the case, have become the owner of the property belonging to his principals. If the Smiths and Leifert had retained title to the mining claims, the plaintiff would not, by virtue of a decree of strict foreclosure of the contract between him and Thomas, have acquired or been entitled to any interest in those claims. Under such circumstances he would be regarded as acting on behalf of the owners of the claims. The $1,000 paid by Shelley to the Smiths and Leifert was not referable to the contract between Cox and Thomas. Cox had no interest in the Gold Bond mining claims

prior to this payment, and it is difficult to see how he could have acquired any as a result of the payment made by Shelley.

The circuit court decreed that Shelley was the owner, "so far as concerns any right or claim of right" by the plaintiff or Thomas, of the Gold Bond claims. In this ruling we concur.

■ The court further decreed that the plaintiff and Thomas had no interest in such claims. To this part of the decree the plaintiff also excepts, on the ground that the defendant Shelley in his affirmative answer setting up ownership of the mining claims did not allege "that no one other than the plaintiff was in possession of the property". In answer to this argument, attention is directed to the fact that the plaintiff in his amended and supplemental complaint and in his further supplemental complaint averred that Shelley and McClanahan were in possession of the mining claims, asserting some right, title or interest in such properties; and in the prayer of the amended complaint the plaintiff asked that they be required to appear and set forth their right, title or interest in the mining claims. Those defendants appeared jointly and set forth that Shelley was the sole and absolute owner of the Gold Bond claims. As owner of the property and in possession thereof, Shelley was entitled to a decree barring and enjoining Cox and Thomas from asserting any right, title, estate, lien or interest in or to the mining claims. McClanahan's possession of the property by permission of Shelley was in fact possession by Shelley.

■ After the cause had been submitted to the court the plaintiff filed a motion to reopen the case in the event that the court should not make certain determina-

tions, in order to permit the plaintiff to join the Smiths and Leifert as parties plaintiff or defendant. This was denied by the court, and rightly so, according to our view. First, the court was not requested to reopen the case except following a decision adverse to the plaintiff; and secondly, the motion came too late.

■ The plaintiff also complains that the circuit court did not in its decree fully protect his rights conferred by a certain water permit that-had been issued by the state engineer. He asks that the plaintiff's rights under such permit be quieted against all the defendants, including Shelley, and that the state engineer be directed to make a proper entry in his records accordingly. The answer to this argument is that the defendant Shelley claims title only to the three mining properties and the water rights thereunto appurtenant, and such water rights were not made an issue by the pleadings in the case. As far as Thomas and Gold Bond Placers are concerned, the decree did quiet against them the plaintiff's water right under the permit.

■ It is alleged in the affirmative answer and cross-complaint of Shelley and McClanahan that McClanahan is the owner of certain personal property. In his reply to that answer the plaintiff denied that McClanahan was the owner and asserted ownership in himself. Error is predicated by the plaintiff on the failure of the trial court to make findings as to the ownership of the personal property and the court's refusal to decree that plaintiff was the owner.

The personal property involved, consisting of machinery, mining equipment and supplies, was sold by Casey Tractor Appliances Co. on conditional sale contract to the corporation, Gold Bond Placers. Title thereto, according to the contract, was to remain in

the seller pending full payment of the purchase price. On March 9, 1938, before the purchase price had been fully paid, Casey Tractor Appliances Co. sold to Shelley all its right, title and interest in and to the contract and the property therein described. Thereafter, on default of Gold Bond Placers to make the payments provided by the contract, Shelley, according to his testimony, acting under the provisions of that contract, took possession of the personal property and sold it to himself as highest bidder. On May 31, 1938, Shelley sold this property to McClanahan. The plaintiff claims ownership of it by execution sale on a judgment procured by him against Gold Bond Placers. This sale was made August 3, 1939. There was no evidence introduced that Gold Bond Placers had any interest in the personal property at the time of the sale on execution.

At the close of the trial, proposed findings were filed by the plaintiff, in which no mention whatever was made of the personal property, and apparently no request was made of the circuit court to make findings as to its ownership. In the heated contest over the Gold Bond mining claims the personal property seems to have been overlooked. The plaintiff has not in any wise been prejudiced by the omission of the court to determine the ownership of the personal property.

We find that the circuit court committed no error, and the decree appealed from is therefore affirmed.

BEAN, J., not participating.